**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert A. Gosnell, | ) No. CV-09-01399-PHX-NVW |
| Plaintiff, | ) **ORDER** |
| vs. | ) |
| United States of America, | ) |
| Defendant. | ) |

This case is before the Court on the parties' cross-motions for summary judgment on stipulated facts. (Docs. 17, 18, 21.) Oral argument was heard on April 8, 2011.

**I.    Procedural and Factual Background**

Plaintiff Robert A. Gosnell is a developer of luxury resort properties. In the early 1980's Gosnell formed a limited partnership to develop the Tapatio Cliffs luxury resort ("the Resort") near Phoenix, Arizona. The limited partnership was called Pointe Tapatio Resort Properties No. 1, LP ("the Limited Partnership"). In the aggregate, Gosnell and his business entities owned about 69 percent of the Limited Partnership. One of Gosnell's business entities was the general partner of the Limited Partnership, and Gosnell and his executive team were the Limited Partnership's principal decision makers.

In 1986, the Limited Partnership accepted Mutual Life Insurance Company of New York ("MONY") as a joint venture partner, and the Resort asset was placed in a newly formed partnership, MONY/PTC Properties Joint Venture. In 1997, MONY exercised a

buy-sell provision contained in the joint venture agreement.  To raise the funds necessary to buy out MONY and place $16.8 million in escrow pending the outcome of litigation with MONY, the Limited Partnership obtained loans from Hilton Hills Corporation and its wholly owned subsidiary Destination Resorts International, Inc.  As a result, ownership of the Resort was transferred to a new joint venture owned jointly by the Limited Partnership and Destination Resorts International, Inc.  As security for its loans, the Limited Partnership put up its interest in the new joint venture and the disputed funds held in escrow subject to a claim by MONY.

In March 2000, the Limited Partnership was in default under one of the loans because it failed to make a quarterly interest payment.  If it failed to satisfy the defaulted loan, the Limited Partnership would not only lose its interest in the Resort, it would incur taxable income of more than $30 million in connection with a foreclosure or transfer in lieu of foreclosure.  This taxable income would pass through the Limited Partnership, an entity not subject to income tax, to Gosnell and his partners, who ultimately would be liable for the income tax resulting from the income.

Gosnell arranged with KPMG to purchase a "Son of BOSS"[1] transaction that, according to KPMG, would either (1) make a large profit sufficient to pay off the loan and save the resort or (2) generate non-economic tax losses sufficient to offset the income anticipated from losing the Resort.  Gosnell and 22 of the other individual Limited Partnership partners participated in the Son of BOSS transaction.  The participants in the transaction faced no risk of incurring an economic loss in excess of their out-of-pocket costs.  The transaction involved, among other things, the sale and purchase of foreign currency option contracts by each participant, contributions of those contracts by the

---

[1]"BOSS" is an acronym for "Bond and Options Sales Strategy" and refers to an abusive tax shelter.  "Son of BOSS" refers to variants of the slightly older BOSS tax shelter. In IRS Notice 2000-44 ("Tax Avoidance Using Artificially High Basis"), published September 5, 2000, the IRS alerted taxpayers that the Son of BOSS scheme had been listed as an abusive tax shelter.

participants to the Limited Partnership, contributions of those contracts by the Limited Partnership to a newly formed second-tier partnership ("Holdings LLC") controlled by the Limited Partnership, and contributions of those contracts by Holdings LLC to a newly formed third-tier partnership ("Acquisitions LLC"), which also was controlled by the Limited Partnership.  Gosnell was an officer of Holdings LLC.

The Son of BOSS transaction included Gosnell and each of the other participants selling a short foreign currency option contract to, and purchasing a long foreign currency option contract from, Deutsche Bank.  The option contracts, purchased on August 24, 2000, were on Japanese yen and would be exercisable only at 10:00 a.m., January 15, 2001.  The strike price for the long contracts was 124.56.  The strike price for the short contracts was 124.58.  A profit could be made only if the market price for yen was 124.57 at 10:00 a.m., January 15, 2001.  If not, the contracts would expire worthless.  The contracts were dated to close before Destination Resorts International's anticipated foreclosure.

After selling and purchasing the short and long contracts, Gosnell and the other participants contributed their contracts to the Limited Partnership and received an aggregate capital contribution credit of $36,891,562.  These contributions served to increase pro rata the "outside basis"[2] the participating partners claimed in their respective partnership interests.  This aggregate capital contribution credit figure represented $35,411,000 in basis for their contribution of the long contracts (which KPMG considered to be an asset because of its potential value), with no reduction for the potential offsetting liability of the short contracts (which KPMG did not consider a liability for purposes of

---

[2]"The tax concept of 'basis' in the partnership-tax context refers to the value of a partner's investment in the partnership." *Desmet v. Comm'r of Internal Revenue*, 581 F.3d 297, 300 n.2 (6th Cir. 2009).  "Outside basis refers to the partner's basis in his or her partnership interest, while inside basis refers to the partnership's basis in its own assets." *Murfam Farms, LLC v. United States*, 94 Fed. Cl. 235, 244 (2010).  "Outside basis is an affected item, not a partnership item." *Id.* (quoting *Jade Trading, LLC v. United States*, 598 F.3d 1372, 1380 (Fed. Cir. 2010).

1   determining the basis each relevant partner claimed), plus $1,480,562 in basis for cash

2   contributions (which were used to pay the costs of the transaction).

3        Then the Limited Partnership contributed both the short and long contracts to

4   Holdings LLC.  The Limited Partnership claimed an outside basis of $35,411,000.

5   Holdings LLC then contributed the same contracts to Acquisitions LLC.  Holdings LLC

6   claimed an outside basis of $35,411,000.  Then the Limited Partnership contributed its

7   ownership interest in the Resort (held by the Limited Partnership and Destination Resorts

8   International, Inc. joint venture) plus 94 percent of its interest in Holdings LLC to a

9   newly formed partnership with Hilton ("Hilton-Holdings partnership").  The Limited

10  Partnership claimed an outside basis of $33,315,000 in the Hilton-Holdings partnership.

11       In December 2000, Acquisitions LLC "closed" the contracts before their exercise

12  date by exchanging them for $1,000 in Canadian currency, their approximate market

13  value at the time, generating a short-term capital loss.  In March 2001, the Limited

14  Partnership liquidated the 6 percent interest it had retained in Holdings LLC, obtaining its

15  share of the Canadian dollars held by Acquisitions LLC.  In July 2001, unable to satisfy

16  the defaulted loan, the Limited Partnership transferred its remaining 94 percent interest in

17  the Hilton-Holdings partnership to Destination Resorts International in lieu of

18  foreclosure.

19       In December 2001, the Limited Partnership exchanged its Canadian dollars for

20  U.S. dollars.  On its 2001 tax return, the Limited Partnership claimed a foreign currency

21  loss of approximately $2,096,000 resulting from exchanging its Canadian dollars for U.S.

22  dollars.  This foreign currency loss was due to claiming a basis in the Canadian dollars

23  equal to approximately 6 percent of its original $35,411,000 capital contribution to

24  Holdings LLC (when the Limited Partnership cashed out its 6 percent interest in Holdings

25  LLC for Canadian dollars, its basis in its partnership interest carried over to the property

26  received from the partnership).

27       Gosnell received a 2000 Form K-1 reporting his share of the short-term capital

28  loss, which he reported on his Form 1040 for 2000.  This derivative share of loss resulted

1    in a claimed benefit to Gosnell of $239,047 on his 2000 tax return. On his 2000 tax
2    return, Gosnell's share of non-passive ordinary foreign currency loss from the transaction
3    was a claimed $15,838.

4           On its 2001 return, the Limited Partnership took the position that the income it
5    otherwise would have realized from the disposition of its interest in the Hilton-Holdings
6    partnership from the deed in lieu of foreclosure was largely offset by the $33,315,000
7    increase in basis it received when it contributed its 94 percent interest in the Limited
8    Partnership and Destination Resorts International, Inc. joint venture to the Hilton-
9    Holdings partnership. With respect to Gosnell, $7,723,078 of his proportionate share of
10   income was offset.

11          On its 2001 return, the Limited Partnership reported the costs of the transaction as
12   a business expense. Gosnell received a 2001 Form K-1 from the Limited Partnership
13   reporting his share of this business expense, which he reported as a loss on his Form 1040
14   return for 2000. This 2001 share of the Limited Partnership's business expense was a
15   claimed benefit to Gosnell of $347,564. On his 2001 return, Gosnell's share of long-term
16   capital loss from the transaction was a claimed $977,561. Gosnell carried forward
17   $949,692 of that claimed loss to 2002. Gosnell did not use the carried-forward loss in
18   2002 and so carried it forward to 2003.

19          In 2004, the Internal Revenue Service ("IRS") opened an examination of the
20   Limited Partnership and related partnerships involved in the Son of BOSS transaction.
21   On May 24, 2004, the IRS announced a Settlement Initiative involving Son of BOSS
22   transactions. Under the terms of the Settlement Initiative, if taxpayers agreed to the
23   deficiency in income tax and statutory interest resulting from disallowance of the tax
24   benefits they claimed from the transaction, they could reduce their I.R.C.[3] § 6662 civil
25   penalty exposure from forty percent of the deficiency to ten or twenty percent, depending
26
27   _____
28          [3]I.R.C. refers to the Internal Revenue Code, Title 26 of the United States Code.

on the circumstances, and deduct the out-of-pocket costs of the transaction.  Payment of the tax, penalty, and interest was required in full within thirty days.

On June 21, 2004, Gosnell and all but one of the other individual participants in the Son of BOSS transaction notified the IRS of an intention to seek relief under the Settlement Initiative.  In a letter to IRS revenue agent Onalee Whitmore dated August 25, 2004, Kristina C. Gibson, on Gosnell's behalf, enclosed a Notice of Election to Participate in Announcement 2004-46 Settlement Initiative and supporting enclosures.  In his Notice of Election to Participate in Announcement 2004-46 Settlement Initiative, Gosnell disclosed that he had claimed total tax benefits of $9,127,421 and net out-of-pocket costs of $347,564.  When applying for Settlement Initiative relief, Gosnell disclosed the Son of BOSS tax benefits he claimed on his 2000, 2001, and 2003 returns.

On December 22, 2004, Whitmore sent Gosnell a Form 4549A, *Income Tax Examination Changes*, notifying him of the changes to his individual income tax liabilities.  (Doc. 17-7.)  Along with the Form 4549A, Whitmore sent Gosnell a proposed Form 906 settlement agreement, which set forth relevant facts and described all of the benefits and attributes he had claimed from the shelter, including the changes to his tax liabilities for tax years 2000, 2001, and 2003 set forth in the Form 4549A, a deduction for out-of-pocket costs, and assessment of a ten percent penalty pursuant to the terms of the Settlement Initiative.  (*Id.*)  Whitmore's cover letter states, in part:

> Enclosed is Form 906, *Closing Agreement*, under Internal Revenue Code Sections 7121 and 6224(c), reflecting the terms of the settlement, as well as certain attachments.  Under Section 4 of Announcement 2004-46, the Closing Agreement must be signed and returned **within 30 days of the date of this letter to the address above**.

> The tax deficiency, any applicable penalties, and interest are shown on the enclosed Form 4549-A, *Income Tax Examination Changes* (audit report); explanations for the adjustments are provided on Form 886-A.  Full payment of this amount should accompany the signed Form 906.  If you are unable to fully pay the liabilities, please advise me as soon as possible and complete the enclosed Forms 433-A and 433-B, *Collection Information Statements*, (also available on our website at www.irs.gov).

(*Id.* at 3; emphasis in original.)  The enclosed Form 906, which Gosnell subsequently signed and returned, states, in part:

(14)  Taxpayer will pay a penalty under I.R.C. section 6662 of 10 percent of the underpayment of tax attributable to the Son of BOSS transaction (taking into account the amounts shown in paragraphs (9) and (10) of this Closing Agreement.

(15)  The Taxpayer, by signing this agreement, waives all defenses against and restrictions on the assessment of the tax liabilities determined under this Closing Agreement, including the applicable penalty and interest.

(16)  The Taxpayer shall execute all forms necessary to waive the restrictions on assessment and collection provided by sections 6225(a) and 6213(a), and consent to the assessment and collection of any deficiency resulting from the application of the foregoing paragraphs in accordance with sections 6224(b) and 6213(d) of the Code.

(17)  The Taxpayer shall make full payment of his liability for tax, penalties and interest resulting from the application of the foregoing paragraphs, upon returning this executed closing agreement to the IRS.

(*Id.* at 36; Doc. 17-8.)

On January 20, 2005, Internal Revenue Officer Eric Petersen sent Gosnell an unsigned letter regarding payment arrangements.  Gosnell sent the IRS a check for $5,000 with a copy of Revenue Officer Petersen's letter and later sent a check for $389,018.

On January 21, 2005, Gosnell signed and returned the Form 906 settlement agreement and a Form 872-I extending the statute of limitations on assessment.  In part, the Form 906 stated:

Taxpayer concedes all claimed tax benefits and attributes from the Son of BOSS transaction, including, but not limited to, ordinary or capital losses, inflated basis loss, inflated basis in retained assets, loss carryforwards or carrybacks, deductions for fees, losses passed through from partnerships or other flow-through entities, and net interest expenses on loans from third parties.

On January 27, 2005, revenue agent Onalee Whitmore endorsed the Form 906 as follows: "I have examined the specific matters involved and recommend the acceptance of the proposed agreement."  The IRS did not execute the Form 906 settlement.

On March 9, 2005, Revenue Officer Greg Gillen returned Gosnell's check for $389,018, informing Gosnell that the January 20, 2005 Eric Petersen letter did not constitute an installment agreement.  The parties attempted to negotiate an installment agreement acceptable to the IRS, but the IRS rejected Gosnell's proposal in a letter dated June 16, 2005.

1   The IRS resumed examination of Gosnell's returns.  In a letter dated August 2,

2   2005, Gosnell's representative wrote to the examining agent:  "It is not Mr. Gosnell's

3   desire to contest the substantive imposition of tax."  Gosnell did not dispute that he owed

4   additional taxes in the amounts as previously disclosed pursuant to the Settlement

5   Initiative, but he did seek to persuade the IRS to reduce the forty percent penalty.  On

6   August 16, 2005, Gosnell's representative wrote that Gosnell "remains committed to full

7   payment of all of his tax obligations" and the only unresolved question was the amount of

8   the penalty to be applied to the tax deficiency.  Because Gosnell and two other partners of

9   the Limited Partnership were unable or unwilling to enter into Form 906 settlement

10   agreements pursuant to the Settlement Initiative, the IRS continued its partnership-level

11   examination of the Son of BOSS transaction to its conclusion.

12   On December 30, 2005, the IRS issued a Notice of Final Partnership

13   Administrative Adjustment ("FPAA") to Acquisitions LLC for 2000 and 2001 in the form

14   of twenty duplicate originals sent by certified mail, addressed to Acquisitions LLC and its

15   tax matters partner at multiple addresses, and to the partners of Acquisitions LLC and

16   their tax matters partners at multiple addresses.  No response to the FPAAs was made by

17   or on behalf of Acquisitions LLC.  Because of the defaulted FPAAs, the determinations in

18   the FPAAs became final.

19   On November 6, 2006, the IRS prepared a revised Form 4549A, *Income Tax*

20   *Examination Changes*, pertaining to Gosnell's 2000, 2001, and 2002 income taxes.  The

21   Form 4549A used the same tax adjustments as those in the Form 906 Gosnell signed and

22   the revenue agent recommended, except for the substitution of a forty percent penalty and

23   disallowance of out-of-pocket costs.  The IRS did not send Gosnell this revised Form

24   4549A until August 2007 upon Gosnell's representative's request.  The disallowance of

25   the out-of-pocket costs caused consequences to the calculations of Gosnell's itemized

26   deductions and Alternative Minimum Tax liabilities on his individual federal income tax

27   returns.  The IRS did not send Gosnell a statutory notice of deficiency for 2000, 2001, or

28

2003 because it determined that assessments could be made through computational adjustments without a notice of deficiency.

On May 25, 2007, the IRS made assessments against Gosnell for 2000, 2001, and 2003 based on the revised examination changes.  The assessments for tax, penalties, and accrued interest were $95,659.02 for tax year 2000; $3,104,035.49 for tax year 2001; and $326,744.83 for tax year 2003.  In August 2007, under cover of a Notice 1354-A transmittal slip, the IRS mailed Gosnell's representative a copy of a Form 4549A denominated "Revised Report" reflecting the tax calculations underlying the assessments. On July 19, 2007, and August 14, 2007, Gosnell paid the assessments for 2000, 2001, and 2003 in full, including accrued statutory interest, after his representative verified the mathematical accuracy of the tax calculations in light of the changes the IRS made to add the penalties and disallow the net out-of-pocket expenses.

On November 3, 2008, Gosnell filed Form 1040X administrative refund claims for 2000, 2001, and 2003 with the IRS under I.R.C. § 7422.  Gosnell alleged in each of his administrative refund claims that the IRS made the assessments illegally, without first issuing him a statutory notice of deficiency under I.R.C. § 6212, and that the liabilities could not be reassessed because the applicable limitations periods had expired.  The IRS did not act on the administrative refund claims within six months.

On July 1, 2009, Gosnell commenced this action for refund under 28 U.S.C. § 1346, based on the same grounds stated in his administrative claims, attaching copies of his Form 1040X refund claims to the complaint.  His Complaint for Refund of Internal Revenue Taxes and Penalties seeks recovery of IRS federal income tax, penalties, and interest for the taxable years ended December 31, 2000, December 31, 2001, and December 31, 2003.  (Doc. 1.)  As grounds for recovery, Gosnell alleged and argued in the alternative that (1) he never received a statutory notice of deficiency with respect to his 2000, 2001, and 2003 tax years; (2) the IRS illegally and without authority assessed additional federal income tax, penalties, and interest based erroneously on Form 4549A, *Income Tax Examination Changes*; and (3) he is entitled to a refund of all amounts paid

on the assessments because such amounts are statutory overpayments under I.R.C. § 6402(a).  (*Id.*)

## II.    Statutory Background

### A.    The Tax Equity and Fiscal Responsibility Act ("TEFRA")

Under the Internal Revenue Code, a partnership is required to file an annual information return, but a partnership is not a taxable entity for federal income tax purposes.  *Olson v. United States*, 172 F.3d 1311, 1316 (Fed. Cir. 1999) (citing I.R.C. §§ 701, 6031).  Individual partners are responsible for reporting their distributive share of the partnership's income, loss, deductions, and credits on their individual tax returns and for paying whatever amount of tax is due on their share.  *Id.* (citing I.R.C. § 702).

Before the 1982 enactment of TEFRA, adjustments to the tax treatment of partnership items had to be determined in separate proceedings involving each individual partner because there was no administrative or judicial mechanism for making adjustments to the tax treatment of partnership items at the partnership level.  *Id.*  TEFRA was enacted to permit one proceeding to determine how partnership items would be reported on all partners' individual returns, and it requires partners to treat partnership items on their individual returns consistently with the item's treatment on the partnership information return.  *Id.* (citing I.R.C. § 6222(a)).

TEFRA requires that the tax treatment of any "partnership item" be determined at the partnership level.  *Id.* (citing I.R.C. § 6221).  As defined by regulation, "partnership items" include items of gain, loss, deduction, or credit claimed by the partnership.  *Id.* at 1316-1317.  "The term 'affected item' means any item to the extent such item is affected by a partnership item."  I.R.C. § 6231(a)(5).

The IRS must give partners notice of the beginning of an administrative proceeding at the partnership level with respect to a partnership item and the FPAA, *i.e.*, notice of final partnership administrative adjustment, resulting from any such proceeding. I.R.C. § 6223(a).  Upon completion of partnership-level proceedings, the IRS must mail to the tax matters partner and each notice partner a copy of the resulting FPAA before

1   making any assessments attributable to that item against the partners.  *Olson*, 172 F.3d at

2   1317 (citing I.R.C. § 6223(a)(2)).  Once an FPAA is mailed, the partnership's tax matters

3   partner has ninety days to file a petition for readjustment of partnership items.  *Petaluma*

4   *FX Partners, LLC v. Comm'r*, 591 F.3d 649, 651 (D.C. Cir. 2010) (citing I.R.C.

5   § 6226(a)).  If the tax matters partner does not file within that period, any other partner

6   who received the FPAA has an additional sixty days to file a petition.  *Id.* (citing I.R.C.

7   § 6226(b)(1)).  Once a petition has been filed, the reviewing court has jurisdiction to

8   determine all partnership items for the partnership taxable year addressed by the FPAA.

9   *Id.* (citing I.R.C. § 6226(f)).

10   **B.   Notices of Deficiency**

11   Once a final partnership-level adjustment has been made to a partnership item in a

12   TEFRA proceeding, if there is no challenge to the FPAA or any such challenge has been

13   concluded, the IRS may proceed to make corresponding computational adjustments to

14   each partner's return.  *Desmet v. Comm'r*, 581 F.3d 297, 302 (6th Cir. 2009).  A

15   "computational adjustment" is "the change in the tax liability of a partner which properly

16   reflects the treatment under [TEFRA] of a partnership item."  I.R.C. § 6231(a)(6).  "All

17   adjustments required to apply the results of a proceeding with respect to a partnership

18   under [TEFRA] to an indirect partner shall be treated as computational adjustments."  *Id.*

19   For purposes of § 6230(c)(2), the IRS is deemed to have sent to the partner a

20   notice of computational adjustment when it sends to the partners Form 4549, *Income Tax*

21   *Examination Changes*, showing the adjustments that make the partner's tax return

22   consistent with partnership-level determinations and the subsequent change to tax

23   liability.  IRS Chief Counsel Notice CC-2009-027, 2009 WL 2853841.  Form 4549A,

24   *Income Tax Discrepancy Adjustments*, is "virtually identical" to Form 4549:

25   These forms are virtually identical except the Form 4549 includes a
     signature line for the taxpayer, which, if signed, waives the taxpayer's

26   appeal rights with the Service and ability to contest the form with the Tax
     Court.  The Form 4549-A does not include a signature line for the taxpayer

27   but conveys the same information as the Form 4549; consequently, it meets
     the requirements of the notice of computational adjustment referred to in

28

I.R.C. § 6230(c)(2)(A) starting the 6-month period [for filing a claim for refund].

IRS Chief Counsel Advice CC-2010030109160941, 2010 WL 1257375.

Deficiency procedures provided in I.R.C. §§ 6211-6216 ("Subchapter B"), which include a notice requirement, generally do not apply to the assessment or collection of any computational adjustment. I.R.C. § 6230(a)(1). However, Subchapter B applies to "any deficiency attributable to . . . affected items which require partner level determinations," "other than penalties, additions to tax, and additional amounts that relate to adjustments to partnership items." I.R.C. § 6230(a)(2)(A). If the partner's liability relates to "affected items which require partner level determinations," then the IRS must send a notice of deficiency to that partner, which initiates proceedings against him individually pursuant to Subchapter B deficiency procedures. *Desmet*, 581 F.3d at 302. Deficiency proceedings permit the partner to dispute liability by filing a petition for redetermination before paying the tax. *Id.*; I.R.C. § 6213(a). For deficiencies other than those resulting from mathematical or clerical errors, the IRS may not assess or collect the deficiency before sending the notice of deficiency and the expiration of the taxpayer's time to file a petition for redetermination by the Tax Court. I.R.C. § 6213(a), (b). If the taxpayer files a petition with the Tax Court for a redetermination of the deficiency, the IRS may not assess or collect the deficiency until the decision of the Tax Court has become final. I.R.C. § 6213(a). But if the partner's liability does not relate to affected items requiring partner-level determinations, "the IRS may directly assess the tax against the individual partner by making a computational adjustment—applying the new tax treatment of all partnership items to that partner's return." *Desmet*, 581 F.3d at 302.

## C.   Claims for Refunds

A partner may file a claim for refund on grounds that the IRS "erroneously computed any computational adjustment necessary . . . to apply to the partner a settlement, a final partnership administrative adjustment, or the decision of a court in an action brought under section 6226 or section 6228(a)." I.R.C. § 6230(c)(1)(A). A partner

also may file a claim for refund on the grounds that the IRS "erroneously imposed any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item." I.R.C. § 6230(1)(C). Any claim under § 6230(1)(A) or (C) must be filed within six months after the day on which the IRS mails the notice of computational adjustment to the partners. I.R.C. § 6230(c)(2)(A).

Additionally, a partner may file a claim for refund on the grounds that the IRS "failed to allow a credit or to make a refund to the partner in the amount of the overpayment attributable to the application to the partner of a settlement, a final partnership administrative adjustment, or the decision of a court in an action brought under section 6226 or section 6228(a)." I.R.C. § 6230(c)(1)(B). Any such claim must be filed within two years after the settlement is entered into, the court decision becomes final, or "the day on which the period during which an action may be brought under section 6226 with respect to the final partnership administrative adjustment expires." I.R.C. § 6230(c)(2)(B).

### D.    Limitations Periods for Making Assessments

The period for assessing any income tax that is attributable to any partnership item (or affected item) for a partnership taxable year generally does not expire before the date that is three years after the later of the (1) the date on which the partnership return for the taxable year was filed or (2) the last day for filing the return for that year (determined without regard to extensions). I.R.C. § 6229(a). The period may be extended by agreement before the expiration of the period. I.R.C. § 6229(b). If notice of an FPAA with respect to any taxable year is mailed to the tax matters partner, the running of the period shall be suspended for the period during which an action may be brought under § 6226 and for one year thereafter. I.R.C. § 6229 (d). Limitations periods apply to penalties the same as if they were imposed as income tax. I.R.C. § 6229(g).

### III.    Jurisdiction

Gosnell's complaint alleges subject matter jurisdiction under 28 U.S.C. § 1346(a)(1) and I.R.C. § 7422. Under 28 U.S.C. § 1346(a)(1), district courts have

original jurisdiction of "[a]ny civil action for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws."

I.R.C. § 7422 permits civil actions against the United States for the refund of taxes, but § 7422(a) prohibits suit before filing a claim for refund:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

Section 7422's requirement that a person first file an administrative claim before commencing a district court action is "a statutory limitation on Congress's express waiver of sovereign immunity pursuant to § 1346(a)(1)." *Dunn & Black, P.S. v. United States*, 492 F.3d 1084, 1090-91 (9th Cir. 2007). "Unless a taxpayer has duly filed a claim for refund of federal taxes with the IRS, a district court is without jurisdiction to entertain a suit for refund, and a claim is not duly filed unless it is timely." *Yuen v. United States*, 825 F.2d 244, 245 (9th Cir. 1987) (per curiam).

Section 7422(h) provides, "No action may be brought for a refund attributable to partnership items (as defined in section 6231(a)(3)) except as provided in . . . section 6230(c)." Section 6230(c) establishes two different limitations periods:  (1) two years for a claim for refund of overpayment and (2) six months for a claim for refund due to erroneous computation of a computational adjustment or erroneous imposition of a penalty or additional amount related to adjustment of a partnership item.

Gosnell states that he seeks a refund of overpayment under § 6401(a) based on the IRS's failure to send him a statutory notice of computational adjustment, in which case the two-year limitations period would apply.  Section 6401(a) defines "overpayment" as "that part of the amount of the payment of any internal revenue tax which is assessed or

collected after the expiration of the period of limitation properly applicable thereto."

Gosnell's complaint alleges the following:

> A.     Plaintiff never received a statutory notice of deficiency with respect to his 2000, 2001 and 2003 tax years.
>
> B.     After failing to issue statutory notices of deficiency, the IRS illegally and without authority assessed additional federal income tax, penalties, and interest. The assessments were erroneously based on Form 4549A Income Tax Examination Changes.
>
> C.     The Plaintiff is entitled to a refund of all amounts paid on the assessments pursuant to the Form 4549A Income Tax Examination Changes, because such amounts are statutory overpayments under 26 U.S.C. § 6402(a).[4]

(Doc. 1 at 3.) Gosnell also contends that he is "seeking a statutory overpayment under IRC § 6401(a) based on the government collecting an illegally assessed tax liability." (Doc. 22 at 3.)

A partner's claim that the IRS "failed to allow a credit or to make a refund to the partner in the amount of overpayment attributable to the partner of . . . a final partnership administrative adjustment" may be filed within two years after "the day on which the period during which an action may be brought under section 6226 with respect to the final partnership administrative adjustment expires." I.R.C. § 6230(c)(2)(B)(ii). The IRS issued an FPAA to Acquisitions LLC for tax years 2000 and 2001 on December 30, 2005. The tax matters partner could have filed a petition for readjustment of partnership items for those tax years within ninety days, and any notice partner could have filed a petition for readjustment within sixty days after the close of the ninety-day period. I.R.C. § 6226(a), (b). Thus, Gosnell's time to bring an action for overpayment for tax years 2000 and 2001 expired two years and 150 days after December 30, 2005, which was May 30, 2008. On November 3, 2008, Gosnell filed Form 1040X administrative refund claims for 2000, 2001, and 2003. Thus, if Gosnell's claims were, as he contends, for refund of

---

[4]The reference should be to § 6401(a).

1   overpayment under § 6230(c)(1)(B), they were untimely under§ 6230(c)(2)(B)(ii), and the

2   Court would lack jurisdiction to entertain this suit for refund.  *See Yuen*, 825 F.2d at 245.

3        But the IRS argues, and the Court agrees, Gosnell's claim is not one for

4   overpayment.  He does not really seek reimbursement of taxes "assessed or collected after

5   the expiration of the period of limitation properly applicable thereto" because, as shown

6   below, he concedes that the assessments and collections were timely.  Rather, Gosnell

7   argues that the assessment periods never properly opened because the IRS did not issue a

8   notice of deficiency.  But, as shown below, the IRS was not required to issue a notice of

9   deficiency.  Therefore, Gosnell's claim more closely resembles a claim that the IRS

10  "erroneously computed any computational adjustment necessary . . . to apply to the

11  partner . . . a final partnership administrative adjustment" or "erroneously imposed any

12  penalty . . . which relates to an adjustment to a partnership item."  I.R.C. § 6230(c)(A)(ii),

13  (C).

14       Because Gosnell's claim arises under § 6230(c)(A) or (C), the six-month

15  limitations period applies.  The IRS contends, therefore, that Gosnell's administrative

16  claims were untimely under § 6230(c) because they were filed in November 2008, which

17  is more than six months after the IRS sent Gosnell's representative a copy of a Form

18  4549A in August 2007.

19       Section 6230(c)(2)(A) requires that a partner's claim arising out of erroneous

20  computation of a computational adjustment to a partnership item or erroneous imposition

21  of penalty or additional amount related to an adjustment to a partnership item be filed

22  within six months after the day on which the IRS mails the notice of computational

23  adjustment to the partner.  For purposes of § 6230(c)(2), the IRS is deemed to have sent

24  to the partner a notice of computational adjustment when it sends to the partners a Form

25  4549 showing the adjustments that make the partner's tax return consistent with

26  partnership-level determinations and the subsequent change to tax liability, and Form

27  4549A is "virtually identical" to Form 4549.  The IRS mailed to Gosnell a Form 4549A

28  on December 22, 2004, as part of the settlement documents, before the partnership-level

1   examination concluded.  Although the IRS subsequently prepared a revised Form 4549A

2   after the partnership-level examination was completed and the FPAA was issued, the

3   record does not show that the revised Form 4549A was mailed to Gosnell.  Nor does the

4   record show any basis for finding that mailing the revised Form 4549A to Gibson in

5   August 2007 was equivalent to mailing it to Gosnell, as required by § 6230(c)(2)(A).  On

6   this record, the IRS has failed to show when the six-month limitations period for Gosnell

7   to file an administrative claim began.  Thus, agreeing with the IRS that Gosnell's claims

8   were for refund under § 6230(c)(1)(A) or (C), the Court must conclude his administrative

9   claim was timely under § 6230(c)(2)(A), and therefore it has subject matter jurisdiction to

10  decide this case under 28 U.S.C. § 1346(a)(1) and I.R.C. § 7422.

11  **IV.    Analysis**

12          **A.    Did the IRS Assess Additional Tax, Penalties, and Interest Outside of
                    the Limitations Periods**?

13          In his motion for summary judgment, Gosnell asserts that "the IRS not only

14  assessed the tax against plaintiff, Mr. Gosnell, after the statute of limitations on

15  assessment expired, the IRS also collected the tax after the statute of limitations expired."

16  (Doc. 18 at 3.)  But Gosnell also states that the limitation period during which the IRS

17  was permitted to assess his 2000 and 2001 taxes expired on May 30, 2007, and the

18  limitation period during which the IRS was permitted to assess his 2003 taxes expired

19  October 15, 2007.  (*Id.* at 12.)  And the parties stipulated that the IRS made assessments

20  against Gosnell for 2000, 2001, and 2003 on May 25, 2007.  (Doc. 17 at 14, ¶ 78.)

21  Similarly, Gosnell states, "Plaintiff's 2003 statute of limitations expired on October 15,

22  2007," and "the assessments for 2000, 2001, and 2003 [were] made on May 24, 2007."[5]

23  (Doc. 18 at 12.)

24          In response, the IRS noted that Gosnell acknowledged that the assessments were

25  made before the earliest limitations period expired and that Gosnell's "real argument is

26

27          [5]The IRS's response does not dispute Gosnell's reference to May 24, 2007, even
28  though the parties' Stipulation of Facts states the assessment was made on May 25, 2007.

1    that the assessments were 'illegal' when they were made because no notice of deficiency

2    was issued."  (Doc. 21 at 2 n.1.)  Gosnell replied, "Here, this is a distinction without a

3    difference, but plaintiff maintains that there was nothing to keep the statute of limitations

4    on assessment open at any time, because the IRS was prohibited from making any

5    assessments at all times."  (Doc. 22 at 4.)

6         Thus, it appears that Gosnell concedes that the IRS assessed the 2000, 2001, and

7    2003 taxes against Gosnell within the applicable statutory limitations periods if the IRS

8    were permitted to assess the taxes without issuing notices of deficiency.

9         **B.    Did the Final Partnership Administrative Adjustment Require a**
             **Partner-Level Determination? Was the IRS Required to Send Gosnell a**
10            **Notice of Deficiency?**

11        Subchapter B, which includes a notice of deficiency requirement, applies to "any

12   deficiency attributable to . . . affected items which require partner level determinations,"

13   "other than penalties, additions to tax, and additional amounts that relate to adjustments to

14   partnership items."  I.R.C. § 6230(a)(2)(A).

15        Gosnell contends that adjustment of partnership items at the partnership level

16   related to the Son of BOSS transaction required a partner-level determination to apply the

17   adjustments to him individually.  If a partner-level determination was required, the IRS

18   was required to have sent him a notice of deficiency, and it did not.  A notice of

19   deficiency would have triggered a ninety-day period during which he could have sought

20   redetermination by the Tax Court, which would have postponed the time during which the

21   IRS would have been permitted to assess and collect the deficiency from him.   He states

22   that although he does not dispute the calculation and amount of tax assessed, he was

23   deprived of opportunity to raise procedural issues before the Tax Court.

24        When Gosnell applied for Settlement Initiative relief, he disclosed the Son of

25   BOSS tax benefits he claimed on his 2000, 2001, and 2003 returns.  On December 22,

26   2004, the IRS sent Gosnell a Form 4549A, notifying him of the changes to his individual

27   income tax liabilities.  The IRS also sent Gosnell a proposed Form 906 settlement

28   agreement, which set forth relevant facts and described all of the benefits and attributes

he had claimed from the shelter, including the changes to his tax liabilities set forth in the Form 4549A, a deduction for out-of-pocket costs, and assessment of a ten percent penalty pursuant to the terms of the Settlement Initiative.  In August 2005 Gosnell's representative communicated to the IRS:  "The **only** unresolved question in the Examination of tax years 2000, 2001, 2002 and 2003 **is the amount of the penalty to be applied to the deficiency in tax**."  (Doc. 17 at 12; emphasis in original.)  After the IRS completed the partnership-level examination of the Son of BOSS transaction, it issued an FPAA, and no response to the FPAAs was made by or on behalf of Acquisitions LLC.  Then the IRS prepared a revised Form 4549A which used the same tax adjustments as those in the Form 906 Gosnell signed and the revenue agent recommended, except for the substitution of a forty percent penalty and disallowance of out-of-pocket costs.  The disallowance of the out-of-pocket-costs caused consequences to the calculations of Gosnell's itemized deductions and Alternative Minimum Tax liabilities on his individual federal income tax returns.  The assessments made against Gosnell for 2000, 2001, and 2003 on May 25, 2007, were based on the revised examination changes.  The revised Form 4549A was sent to Gosnell's representative in August 2007, and Gosnell paid the assessments in full after his representative verified the mathematical accuracy of the tax calculations in light of the changes the IRS made to add the penalties and disallow the net out-of-pocket expenses.

In *Olson*, the Federal Circuit held that the disputed assessments "were mere 'computational adjustments' requiring no noncomputational, factual determinations at the partner level and thus were not subject to the Code's standard deficiency procedures."  172 F.3d at 1317.  The court explained that the assessment appeared to be "a prime example of a mere computational adjustment because it apparently entailed nothing more than reviewing the taxpayers' returns for the years in question, striking out the tax credits that had been improperly claimed, and re-summing the remaining figures."  *Id.* at 1318.  It did not matter that the IRS may need to ask the taxpayer for certain additional information regarding certain figures on the tax returns, as long as "no individualized factual

determination takes place as to the correctness of the originally declared figures or any other factual matter such as the state of mind of the taxpayer upon filing." *Id.* Although in *Olson* the taxpayers had signed a settlement agreement regarding partnership items and the IRS had accepted it, and here the IRS did not accept Gosnell's settlement offer, both in *Olson* and here the partnership items were resolved, and only issues regarding applying the adjustment of partnership items to affected items on the individuals' tax returns was disputed. Here, as in *Olson*, the application of undisputed facts to the individual tax returns requires only computational action.

The Second Circuit has provided this example:

> An example of an affected item that requires no further factual determination at the partner level would be a partner's medical expense deduction, pursuant to I.R.C. §213(a). The allowable deduction is a function of the partner's adjusted gross income, which in turn depends on the partner's distributive share of the partnership income or loss. Determining the allowed deduction is a mathematical calculation and requires no further factual finding.

*Callaway v. Comm'r*, 231 F.3d 106, 110 n.4 (2d Cir. 2000) (citation omitted).

Here, no partner-level determination of any affected item was required. The substitution of a forty percent penalty and disallowance of out-of-pocket costs required only mathematical calculations. Gosnell's representative verified the mathematical accuracy of the tax calculations before Gosnell paid the taxes in full. No resolution of factual issues was required to apply the partnership-level adjustment to Gosnell's individual return.

Therefore, the IRS was not required to send Gosnell a notice of deficiency because adjustment at the partnership level did not require any partner-level determination before assessing and collecting additional income tax, interest, and penalties from Gosnell.

IT IS THEREFORE ORDERED that Plaintiff's Motion for Summary Judgment (Doc. 18) is denied and Defendant's Cross-Motion for Summary Judgment (Doc. 21) is granted.

1        IT IS FURTHER ORDERED that the Clerk shall enter judgment in favor of

2   Defendant and against Plaintiff.  The Clerk shall terminate this case.

3        DATED this 28th day of June, 2011.

4

5   _____

6                Neil V. Wake
             United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28